IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **ROBERT E. MILLER,** | ) | **CASE NO. 4:13CV3128** |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **ROBERT HOUSTON, Director,** | ) | |
| **Nebraska Department of Correctional** | ) | |
| **Services,** | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Petitioner Robert Miller's ("Petitioner" or "Miller") Petition for Writ of Habeas Corpus. (Filing No. 1.) For the reasons set forth below, the court finds that a grant of a writ of habeas corpus is not warranted on any of the issues set forth in Miller's habeas corpus petition.

Liberally construed, Miller argues that he is entitled to a writ of habeas corpus based on the following claims:

Claim One: Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because his trial counsel (1) failed to advise the court of conflicts of interest, (2) coerced and "bullied" Petitioner to plead guilty to the charges against him, and (3) refused to investigate relevant facts and evidence.

Claim Two: Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because his appellate counsel failed to assign trial counsel's ineffectiveness as error on appeal.

(*Id.*)

## I. BACKGROUND

### A. Conviction

The State of Nebraska ("State") charged Miller by information in the District Court of Thayer County, Nebraska ("state district court"), with terroristic threats, false

imprisonment, possession of a deadly weapon by a prohibited person, use of a deadly weapon to commit a felony, and unlawful discharge of a weapon. (Filing No. 4-1 at CM/ECF p. 15.) As part of a plea agreement, the State amended the original information to charge Miller only with the crimes of possession of a deadly weapon by a prohibited person and unlawful discharge of a weapon. (*Id.* at CM/ECF pp. 19-21.) On January 6, 2011, Miller pled guilty to the amended information. (*Id.*) On April 7, 2011, the state district court sentenced Miller to a period of not less than 10 nor more than 15 years' imprisonment. (*Id.* at CM/ECF p. 25.)

**B.    Direct Appeal**

Miller filed a direct appeal of his conviction and sentence. Miller was represented by trial counsel on appeal. (*Id.* at CM/ECF p. 1.) On direct appeal, Miller argued that he received an excessive sentence, and that the state failed to provide a factual basis for the crime of unlawful discharge of a firearm. (*Id.* at CM/ECF pp. 32-49.)

On November 30, 2011, the Nebraska Court of Appeals affirmed Miller's conviction and sentence by sustaining the State's motion for summary affirmance. (Filing No. 4-4 at CM/ECF p. 8.) Miller did not file a petition for further review in the Nebraska Supreme Court. (*See id.*)

**C.    Post-Conviction Motion**

Miller filed a motion for post-conviction relief in the state district court on January 19, 2012. (Filing No. 4-2 at CM/ECF pp. 94-101.) Miller argued that his attorney had been ineffective during the trial and appellate court proceedings. He argued that his attorney failed to interview witnesses on Miller's behalf, advise Miller of possible defenses, and

advise Miller of his right to be served a copy of the amended information. Miller also argued that his attorney had acted as a prosecutor in one of Miller's prior felony convictions, which created a conflict of interest. Finally, Miller argued that his attorney had not filed a timely direct appeal. (*Id.*) On February 21, 2012, the state district court denied Miller's post-conviction motion in all respects except for his claim that counsel had failed to file Miller's direct appeal on time. (Filing No. 4-3 at CM/ECF pp. 22-27.) Miller did not appeal the state district court's February 21, 2012, order. The state district court denied Miller's post-conviction motion in its entirety on May 10, 2012. (*Id.* at CM/ECF p. 37.)

### D. Habeas Corpus Petition

Miller filed his habeas corpus petition in this court on June 28, 2013. (Filing No. 1.) In response to the petition, Respondent filed an answer, a brief in support of the answer, and the relevant state court records. (Filing Nos. 4, 5, 7, and 8.) Thereafter, Miller filed a brief, an affidavit, and a document entitled "Points and Authorities in Support of Petitioner's Response" in support of his petition. (Filing Nos. 11, 14, and 15.) The court deems this matter fully submitted.

## II. STANDARD OF REVIEW

### A. Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. 529 U.S. at 405-406. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. See *Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir.

4

2004), ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. . . . Accordingly, the postconviction trial court's discussion of counsel's performance–combined with its express determination that the ineffective-assistance claim as a whole lacked merit–plainly suffices as an adjudication on the merits under AEDPA.

Worthington v. Roper, 631 F.3d 487, 496-97 (8th Cir. 2011), (internal quotation marks and citations omitted). The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* The Supreme Court agrees, stating:

> There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

Harrington, 131 S. Ct. at 784.

**B.  Exhaustion Requirement**

As set forth in 28 U.S.C. § 2254(b)(1):

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

5

>       (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
>       (B)   (i)   there is an absence of available State corrective process; or
>             (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts *before* seeking federal habeas relief. *Id.* at 844. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. See Akins v. Kenney, 410 F.3d 451, 454-55 (8th Cir. 2005).

Moreover, where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice

for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005), (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n. 1.

Under Nebraska law, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). In such circumstances, where a Nebraska state court rejects a claim on state procedural grounds, and issues a "'plain statement' that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989); *see also Greer v. Minnesota*, 493 F.3d 952, 957 (8th Cir. 2007), (reiterating that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," federal habeas is barred because "[i]n such instances, the state prisoner forfeits his right to present his federal claim through a federal habeas corpus petition") (quotations omitted). However, the state court procedural decision must "rest[] on independent and adequate state procedural grounds." *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (quotation omitted). "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice." *Id.* (quotation omitted).

### III.  DISCUSSION OF PROCEDURAL DEFAULT

Miller argues in his habeas corpus petition that he was denied the effective assistance of counsel because his trial counsel failed to advise the court of conflicts of interest, coerced him into pleading guilty, refused to investigate possible defenses, and refused to raise various claims on direct appeal.  (*See generally* Filing No. 1.)  Miller's first opportunity to raise these arguments was in his post-conviction motion because the same attorney represented Miller at trial and on direct appeal.  See *State v. Dunster*, 769 N.W.2d 401, 410-411 (Neb. 2009) (reiterating that, in Nebraska, claims of ineffective assistance of counsel raised on direct appeal by the same counsel who represented defendant at trial are premature and will not be addressed on direct appeal).  Respondent argues, and the court agrees, that all of Miller's claims are procedurally defaulted.

As discussed above, a prisoner must "fairly present" the substance of each of his federal constitutional claims to the state courts before seeking federal habeas relief. *O'Sullivan*, 526 U.S. at 844.  In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner.  *Akins*, 410 F.3d 451 at 454-55.

Here, Miller raised his claims to the state district court in his post-conviction motion. (Filing No. 4-2 at CM/ECF pp. 94-101.)  However, he did not "fairly present" these claims to Nebraska's appellate courts.  First, Miller did not properly raise his claims in the Nebraska Court of Appeals because Miller did not appeal the state district court's order from February 21, 2012, which denied the claims Miller now raises in his habeas corpus

8

petition. *See State v. Timmens,* 282 Neb. 787, 793-94 (2011) ("Within a postconviction proceeding, an order granting an evidentiary hearing on some issues and denying a hearing on others is a final [appelable]order as to the claims denied without a hearing."). Second, Miller did not raise any of his claims in the Nebraska Supreme Court. (*See* appellate court docket sheet at Filing No. 4-4 at CM/ECF 2.) For these reasons, the court finds that Miller did not raise any of his claims in one complete round in the Nebraska state courts as required by 28 U.S.C. § 2254(b)(1). Moreover, he cannot now raise the arguments in a successive motion for post-conviction relief. *See Ortiz,* 670 N.W.2d at 792. As such, Miller's claims are procedurally defaulted.

Miller argues that he should be excused from the procedural default of his claims under the United States Supreme Court's decision in *Martinez v. Ryan,* 132 S. Ct. 1309 (2012). The Court held in *Martinez* that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez,* 132 S. Ct. at 1320. The Supreme Court elaborated on and expanded this cause exception in *Trevino v. Thaler,* 133 S. Ct. 1911 (2013). The court held that *Martinez* is applicable not only in circumstances where a state requires a defendant to raise a claim of ineffective assistance of trial counsel in a state collateral proceeding, but also when a state maintains a procedural regime that amounts to such a requirement (i.e., when it is "virtually impossible" for an ineffective assistance claim to be raised on direct review). *Trevino,* 133 S. Ct. at 1914-15.

9

Assuming, without deciding, that *Martinez* applies to federal habeas corpus cases arising from Nebraska convictions, the holding in *Martinez* does nothing to excuse the procedural default of Miller's claims. In *Martinez*, the Court reasoned that a federal habeas court should "hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default *in an initial-review collateral proceeding* . . . ." *Martinez*, 132 S. Ct. at 1318 (emphasis added). Here, the default of Miller's claims did not occur because Miller failed to raise them in the initial-review collateral proceeding (i.e., the post-conviction proceedings before the state district court). Rather, as set forth above, the default occurred because, after raising them in his post-conviction motion, he failed to properly raise them on appeal. In *Martinez*, the Court was concerned that "when an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim." *Id.* at 1316. That concern is not present here where the issues were actually raised in the initial-review collateral proceeding, and then actually considered and rejected by the state district court.

For the foregoing reasons, the court finds that Miller's claims are procedurally defaulted and he has not shown cause and prejudice to excuse the default of his claims. In the alternative, as set forth below, the court finds that Miller's claims have no substantive merit.

### IV. DISCUSSION OF MERITS

**A.** *Strickland* **Standard**

The court will discuss the merits of Miller's claims under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that the petitioner

demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Strickland*, 466 U.S. at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard as incorrect but whether that determination was unreasonable–a substantially higher threshold. . . . And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

11

## B. Claim One, Part (1)

Miller argues he is entitled to habeas corpus relief because his trial counsel, Joseph Casson, acted as a prosecutor in one of his prior felony convictions. (Filing No. 1 at CM/ECF p. 16.) Miller argues that his trial counsel appeared against him in 1990 in the District Court of Jefferson County, Nebraska, on charges of terroristic threats, use of a firearm to commit a felony, and burglary. (*See* Filing No. 15.)

The state district court considered and rejected Miller's claim in its order denying post-conviction relief. It wrote:

> In regard to the issue that Mr. Casson prosecuted the Defendant on cases which are reflected on the pre-sentence report, the Defendant does not show how this in any way prejudiced him. Even assuming that Mr. Casson prosecuted him on the underlying felony on Count III, there is no showing how this alleged conflict of interest prejudiced the Defendant in any manner. This claim is without merit.

(Filing No. 4-3 at CM/ECF p. 23.)

The state district court's findings of fact and conclusions of law on this issue are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. The state district court reviewed the evidence and determined that based on *Strickland*, and other applicable law, that Miller was not entitled to relief on this claim. Miller has not established that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the state court reached "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

12

Miller correctly argues that the United States Supreme Court has held that a criminal defendant has a constitutional right to assistance of conflict-free counsel. See *Strickland, 466 U.S. at 688*. However, to establish a Sixth Amendment violation based on a conflict of interest, Petitioner must show: (1) his trial counsel actively represented conflicting interests; and (2) that an actual conflict of interest adversely affected his performance. *Cuyler v. Sulllivan, 446 U.S. 335, 348 (1980)*. The Supreme Court has stated that "an actual conflict of interest mean[s] precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor, 535 U.S. 162, 171 (2002)*.

Here, Petitioner does not explain why the asserted conflict adversely affected his attorney's work. Indeed, the record reflects that Casson did not prosecute Petitioner on the felony underlying Miller's conviction for possession of a deadly weapon by a prohibited person. (*See* offer of factual basis at Miller's plea proceedings at Filing No. 4-5 at CM/ECF p. 19 ("Mr. Miller is a convicted felon[] having been convicted in Case No. CR96-4584 in the District Court of Jefferson County, Nebraska . . .").) In addition, Miller does not establish how the outcome of the trial court proceedings would have been different if counsel had not be adversely impacted by the alleged conflict. Because Miller has demonstrated neither an actual conflict on the part of his counsel nor any adverse effects of a potential conflict of interest, this court concludes that Petitioner has not shown that the state court's adjudication of this claim was contrary to or an unreasonable application of federal law as determined by the Supreme Court. Petitioner is not entitled to habeas corpus relief on this ground.

C.      **Claim One, Parts (2) and (3)**

Miller argues he is entitled to habeas corpus relief because he felt "bullied" into pleading guilty as a result of his trial counsel's refusal to investigate and interview witnesses. (Filing No. 1 at CM/ECF pp. 17-20.) Miller raised substantially the same argument to the state district court in his motion for post-conviction relief. He argued that his trial counsel failed to investigate possible defenses to the charges, and also that the facts were insufficient to support his guilty plea. (Filing No. 4-2 at CM/ECF pp. 94-101.) The state district court considered and rejected these arguments in its order denying post-conviction relief. It wrote:

> In regard to his claim that there were insufficient facts to support his conviction on Count V, Defendant states in paragraph 11 of his motion, "the facts show that I was inside the house and knew where the shots were being fired and that it was not at any person, but into a wall or ceiling." Thus he admits he fired a weapon into a building.
>
> > §28-1212.02. Unlawful discharge of firearm; penalty. Any person who unlawfully and intentionally discharges a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited motor home as defined in section 71-4603, or inhabited camper unit as defined in section 60-1801 shall be guilty of a Class ID felony.
>
> The Defendant misperceives the meaning of the statute. To be guilty of this offense, one needs to discharge a firearm into a building where there are people; one need not fire AT a person in a building. There was a sufficient factual basis to support this conviction, especially given the admission made by the Defendant in his motion. This claim is without merit.
>
> . . . .
>
> [Miller also argues] that he was set up by the victim to fire the shots into the dwelling, because she used "reversed psychology" on her ex-husband to get him sent to prison by contriving a similar factual situation. He argues that his attorney failed to talk to witnesses who heard the victim brag about what she did to her husband. The Defendant also argues that what he

14

did was justifiable or in self-defense. This seems, at least at the surface, somewhat contradictory to his admission that he fired into the house and knew where he was aiming (at the walls or ceiling). He says that had counsel properly investigated the facts, he would have had a reasonable defense and would have gone to trial.

In the written plea agreement, the Defendant stated that he received a copy of all police reports and a deposition of the victim's testimony. He also states that he is satisfied with the advice of his attorney; further, that the attorney advised him of all elements of the charges. In colloquy with the Court, he confirms these statements as follows:

> COURT: Have you told your attorneys everything that you know about this case?
>
> DEFENDANT: I have, Your Honor.
>
> COURT: Are you satisfied with the job that they have done for you?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Insofar as this case is concerned, do you believe your attorneys are competent and know what they are doing?
>
> DEFENDANT: I do.
>
> COURT: Everything that you and I just talked about, sir, have you talked over with your attorneys?
>
> DEFENDANT: I have, Your Honor.
>
> COURT: And are you ready to proceed?
>
> DEFENDANT: Yes, Your Honor.

At no time did he advise the Court that he believed his counsel had failed to properly investigate either the victim or other witnesses. He was also advised by the Court that by taking a plea agreement, he was waiving any potential defenses (justification and self-defense are, to state the obvious, defenses).

The record is devoid of any evidence that would suggest that the Defendant's plea was made without an investigation of the facts by his attorney, even more importantly, the record does not show that either of

>these witnesses would have provided testimony relevant to his charges and favorable to him. See *State v. Dunkin*, 283 Neb. 30 (2012) at 44. As in *Dunkin*, there is no showing that counsel's preparation for representation of the defendant was unreasonable or inadequate, and there is no showing of a reasonable probabilty that but for the alleged errors of counsel, he would have insisted on going to trial. All of the Defendant's claims in regard to preparation prior to plea are without merit.

(Filing No. 4-3 at CM/ECF pp. 25-26.)

The state district court's findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Miller has not argued, much less established, that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the state court reached "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

Miller offers no explanation for how additional investigation on the part of counsel would have benefitted him, or what evidence existed that would have convinced a judge or jury of his innocence had he gone to trial. Moreover, the *Strickland* standard is particularly rigorous in the plea bargaining context. Because "[p]lea bargains are the result of complex negotiations suffused with uncertainty . . . [in which] defense attorneys must make careful strategic choices in balancing opportunities and risks," "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011). Here, as a result of the plea bargain secured by trial counsel, Miller avoided possible conviction for three additional felonies. (*See* tender of plea document at Filing No. 4-1 at CM/ECF pp.

19-21.) Miller has not established that a grant of a writ of habeas corpus is warranted on this issue.

**D.     Claim Two**

Miller argues that he was denied the effective assistance of counsel because his appellate counsel refused to assign trial counsel's ineffectiveness as error on appeal. Miller's claim has no merit. Miller was represented by the same attorney during the trial court proceedings and on direct appeal. In Nebraska, claims of ineffective assistance of counsel raised on direct appeal by the same counsel who represented defendant at trial are premature and will not be addressed on direct appeal. See *Dunster*, 769 N.W.2d at 410-411. Thus, Miller cannot show that he was prejudiced by counsel's failure to assign his own ineffectiveness on direct appeal. Moreover, Miller raised his claims about trial counsel's ineffectiveness in his motion for post-conviction relief. Thus, he was not prejudiced by the Nebraska state courts' failure to consider the claims on direct appeal. A grant of a writ of habeas corpus is not warranted on this issue.

## V.  CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, Miller has failed to make a substantial showing of the denial of a constitutional right. The court is not persuaded that the issues raised in the petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, the court will not issue a certificate of appealability in this case.

IT IS THEREFORE ORDERED that:

1. This matter is dismissed with prejudice, and a separate judgment will be entered in accordance with this Memorandum and Order; and

2. The court will not issue a certificate of appealability in this matter.

DATED this 5th day of May, 2014.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge

---

∗This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.